UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**BRAD ALEX JORDAN,**

       **Petitioner,**

v.

       Case No. 5:02-CV-107
       Hon. David W. McKeague

**PAUL RENICO,**

       **Respondent.**

_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

**Background**

A jury convicted petitioner of two counts of second degree murder, MCL 750.317 and two corresponding counts of possession of a firearm in the commission of a felony, MCL 750.227b. Petitioner was sentenced to two concurrent terms of life in prison for the second degree murder convictions and two consecutive two year terms for the felony-firearm convictions.

The Michigan Court of Appeals summarized the factual background of petitioner's claims as follows:

> This case arises out of two murders which were committed in Benton Harbor in February 1997. One victim was found dead by police on the street. Defendant approached a Benton Harbor police officer as he was cordoning off the crime scene and led the officer to another body on the floor of the house in which defendant resided. Defendant identified the bodies as his two roommates, Santino and Kinley Poole.
>
> At approximately 7:30 a.m., defendant accompanied police officers to the police station, where he was seated in an office in the detective bureau. At

>approximately 9:15 a.m., detectives conducted a witness interview with defendant, and at approximately 11:00 a.m., defendant gave an exculpatory statement and allowed officers to take several articles of his clothing for analysis after the officers purportedly observed blood on his coat, shoes, and socks. The officers proceeded to conduct a follow-up investigation. Defendant remained alone in the office, wearing long underwear and a tee shirt, until approximately 3:20 p.m., when he was given the warnings required by *Miranda v. Arizona*, 384 U.S. 436; 86 S Ct 1602; 16 L.Ed.2d 694 (1966). He acknowledged that he had received those warnings, declined to speak to an attorney, and agreed to answer questions, making three more statements to the police. His final statement, which was reduced to writing at about 7:15 p.m., was inculpatory and was contrary to the statement given to the officers in the morning. At trial, after the prosecution began to delve into the statements, the court conducted a hearing pursuant to *People v. Walker*, 374 Mich. 331; 132 NW2d 87 (1965). At the conclusion of this hearing, the trial court ruled that all of defendant's statements to the police were voluntary and properly admissible.[1]

*People v. Jordan*, No. 210892 (Mich. App. May 19, 1999), slip op. at 1-2.

Petitioner, through his counsel, filed an appeal to the Michigan Court of Appeals raising the following issue:

>[Petitioner's] state and federal Fifth Amendment rights were violated when the trial court denied [petitioner's] motion to suppress incriminating statements to police, where [petitioner] was in custody for *Miranda* purposes for approximately eight hours before the *Miranda* rights were given.

The Michigan Court of Appeals affirmed the conviction, but remanded for a clerical correction of the judgment of sentence[2]  *People v. Jordan*, No. 210892 (Mich. App. May 14, 1999).  *See* docket no. 19.

---

[1] "A *Walker* hearing is a hearing held in the Michigan state courts, outside the presence of the jury, to determine whether a confession was voluntarily made. *See People v. Walker*, 374 Mich. 331, 132 N.W.2d 87 (1965)." *Machacek v. Hofbauer*, 213 F.3d 947, 951 at fn.3 (6th Cir. 2000).

[2] The trial court erroneously applied petitioner's 224 days' credit for time served to the concurrent life sentences, rather than the consecutive felony-firearm sentences. *People v. Jordan*, No. 210892 (Mich. App. May 14, 1999), slip op. at 3.

Petitioner, through his counsel, filed an application for leave to appeal to the Michigan Supreme Court raising the following issue:

> I. [Petitioner's] state and federal Fifth Amendment rights were violated when the trial court denied [petitioner's] motion to suppress incriminating statements to police, where [petitioner] was in custody for *Miranda* purposes for approximately eight hours before the *Miranda* rights were given.

Petitioner then filed a *pro se* supplemental brief in support of his application for leave to appeal raising the following issues:

> II. A miscarriage of justice occurred when the prosecutor told the jury during closing argument that a state witness to the actual shooting incident offered testimony which was patently exculpatory to [petitioner] because it provided a vastly different physical description of the assailant and the prosecutor argued to the jury that the witness was "mistaken" concerning his description of the assailant without a scintilla of evidence in the record for making such an inference. This denied [petitioner] of his Fifth, Sixth and Fourteenth Amendment right to a fair trial and due process as provided by Michigan Const Article One, Section Twenty and the United States Constitution.
>
> III. [Petitioner] was denied his Sixth Amendment right of the effective assistance of appellate counsel when appellate counsel failed to adequately present for appellate review the matter of the trial court's express finding of fact of the Fourth Amendment violation regarding the unlawful detention of [petitioner] by the police which was exploited for the singular purpose of "extracting" a "confession" from [petitioner].

The Michigan Supreme Court denied petitioner's application for leave to appeal. *People v. Jordan*, No. 114797 (Mich. Jan. 28, 2000). *See* docket no. 20.

Petitioner filed a motion for relief from judgment in the trial court on July 27, 2000. *See* docket no. 21. The trial court rejected petitioner's claim that he was denied his Sixth

Amendment right to effective assistance of appellate counsel for counsel's failure to raise a Fourth Amendment argument pertaining to the trial court's denial of his motion to suppress statements made to the police. The trial court rejected petitioner's motion to the extent that appellate counsel raised an issue on appeal regarding the voluntariness of petitioner's statements to the police. The trial court also rejected petitioner's new argument that his alleged "unlawful detention" amounted to a Fourth Amendment violation and that his subsequent statements to the police should have been excluded as the "fruit of the poisonous tree." The trial court found that the police had probable cause to arrest petitioner, that petitioner had several hours to reflect on the situation and that he was given *Miranda* warnings. Thus, any "taint" caused by his detention, if in fact it was unlawful, "was purged by the intervening circumstances prior to his statements to the police." The trial court also concluded that because the Fourth Amendment argument lacked merit, petitioner's appellate counsel was not required to raise it on appeal. *People v. Jordan*, No. 97-401530-FC (Berrien Co. Cir. Ct.) (Opinion and Order denying motion for relief from judgment Aug. 3, 2001).

Petitioner filed an application for leave to appeal to the Michigan Court of Appeals on August 17, 2001, in which he argued that his appellate counsel was ineffective for failing to raise a Fourth Amendment claim related to his alleged unlawful detention or illegal arrest. *See* docket no. 21. In this regard, petitioner argued that the trial court erred in finding that the police had probable cause to arrest him, that the trial court did not address the issue of probable cause during the *Walker* hearing, that he was unlawfully detained from the moment he was transported in the police vehicle at 6:30 a.m. on the day of the shooting and that the intervening time between his arrest and his statements did not cure the Fourth Amendment violation arising from his unlawful detention. *Id.* The Michigan Court of Appeals denied leave to appeal on October 30, 2001 "for failure to meet the

4

burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Jordan*, No. 236249 (Mich. App. Oct. 30, 2001).

Petitioner filed a delayed application for leave to appeal to the Michigan Supreme Court, raising the following issue:

> Was [petitioner] denied his Sixth Amendment right to the effective assistance of counsel on direct appeal when appointed appellate counsel failed to raise on appeal the erroneous finding of the trial court regarding the suppression of statements taken in violation of the Fourth Amendment?

*See* docket no. 22. The Michigan Supreme Court denied the delayed application on April 29, 2002, "because [petitioner] has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Jordan*, No. 120514 (Mich. April 29, 2002).

In his petition for habeas review, petitioner states the following claim:

> [Petitioner] was deprived of his Fourth, Fifth and Sixth Amendment rights when the Michigan Courts introduced alleged incriminating statements at trial that were violative of *Miranda* and when appointed appellate counsel failed to raise on direct appeal the meritorious and preserved issue of [petitioner's] illegal arrest.

### Discussion

**I.     Standard of Review under 28 U.S.C. § 2254**

Petitioner seeks relief under 28 U.S.C. §2254 which provides that a federal district judge "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Where the state court has adjudicated a claim

5

on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 405 (2000), the Supreme Court interpreted 28 U.S.C. § 2254(d)(1) as creating a distinction between decisions that are "contrary to" and those that involve an "unreasonable application of" clearly established Supreme Court precedent. *Johnson v. Bell*, 344 F.3d 567 (6th Cir. 2003).

> A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." [*Williams*, 529 U.S. at 405]. A state court decision is also "contrary to" Supreme Court precedent if the state court "applies a rule that contradicts the governing law set forth" in that precedent. *Id.*

*Id.* at 572. On the other hand, an "unreasonable application" of clearly established Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.*, *quoting Williams*, 529 U.S. at 407. "An unreasonable application of law is not, according to the

6

Supreme Court, merely incorrect; rather, 'that application must also be unreasonable.'" *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001), *quoting Williams*, 529 U.S. at 411.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana*, 263 F.3d at 546-47, *quoting Williams*, 529 U.S. at 411. The presumption of correctness accorded to state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001); *See* 28 U.S.C. § 2254(e)(1).

Before a state prisoner may seek habeas relief in federal court he must first fairly present the substance of his federal claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270 (1971); *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir. 1994); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994). Here, petitioner presented his habeas issue to the Michigan Courts. Accordingly, the court concludes that petitioner has exhausted his state remedies with respect to this issue.[3]

---

[3] Contrary to respondent's contention, petitioner exhausted his ineffective assistance of appellate counsel claim when he raised it in his motion for relief from judgment pursuant to MCR 6.500 *et seq*. *See Hicks v. Straub*, 377 F.3d 538, 558 n. 17 (6th Cir. 2004), *cert. den.*, -- U.S. -- (March 21, 2005) (state collateral review under MCR 6.500 *et seq.* is the first opportunity that petitioner had to address the issue of ineffective assistance of appellate counsel); *Tucker v. Renico*, 317 F.Supp.2d 766, 773 (E.D. Mich. 2004) (observing that a petitioner's post-conviction motion filed pursuant to MCR 6.500 is "the first practical opportunity to address the issue [of ineffective assistance of appellate counsel] in state court").

7

### II. Petitioner's habeas claims

### A. Fifth Amendment claim

First, petitioner contends that he was deprived of his Fifth Amendment rights when the Michigan state courts introduced incriminating statements at trial in violation of his *Miranda* rights. The Michigan Court of Appeals addressed this claim as follows:

> On appeal, defendant argues that the trial court erred in finding that his incriminating statements to police were made voluntarily and that they were, therefore, admissible evidence. When reviewing a trial court's determination of voluntariness, this Court must examine the entire record and make an independent determination. *People v. Peerenboom*, 224 Mich.App 195, 198; 568 NW2d 153 (1997). However, deference is given to the trial court's assessment of the weight of the evidence and credibility of the witnesses, and the trial court's findings will not be reversed unless they are clearly erroneous. *Id.* A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that a mistake has been made. *People v. Givans*, 227 Mich.App 113, 119; 575 NW2d 84 (1997).
>
> Although the trial court found that defendant was not in custody when he gave his initial exculpatory statement to police, it found that once the police had taken his clothing, he was in custody because a reasonable person in his situation could believe that he was not free to leave. *See People v. Marsack*, 231 Mich.App 364, 374; 586 NW2d 234 (1998). We find no error in this regard. It is uncontroverted that before any further questioning of defendant occurred, he was given his *Miranda* warnings.
>
> In *People v. Cipriano*, 431 Mich. 315; 429 NW2d 781 (1988), our Supreme Court stated that the test to be applied in evaluating the voluntariness of a statement made to police while in their custody is whether "considering the totality of all the surrounding circumstances, the confession is 'the product of an essentially free and unconstrained choice by its maker,' or whether the accused's 'will has been overborne and his capacity for self-determination critically impaired. . . .'" *Id.* at 333-334 (citations omitted). The factors to be considered in making a voluntariness determination include:
>
>> the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was

8

> an unnecessary delay in brin[g]ing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. *Id.* at 334. [Citations omitted.]

> The record shows that defendant was twenty years old, that he could read and write, and that he had graduated from high school and taken some college courses. He had previous experience with law enforcement. There was no evidence, nor did defendant assert, that he was injured, intoxicated or drugged, in ill health, deprived of medical attention, or physically abused or threatened with abuse during the time he was detained and questioned. Testimony established that defendant was in [an] unlocked room, that he was allowed to use the bathroom whenever he chose, which defendant acknowledged was over six or seven times, that he was given a candy bar and a drink, and that he was given a blanket and some socks after he complained of being cold. Although defendant testified that he asked to use a telephone, the officers testified that he did not. Defendant testified that if he had been allowed the use of a telephone, he would have called his mother "down south." However, he acknowledged that he knew that his father was at the police station, and that he made no attempt to contact him. Furthermore, defendant testified that he did not ask to leave.

> Finally, at trial, defendant claimed that all of his statements to the police were a lie and that he had never indicated to them that he had actually been in the house with the victims when they were shot by defendant's brother, Donte Jordan. In *Peerenboom*, *supra* at 199, after applying the *Cipriano* factors, this Court discussed the significance of an admission by a defendant that an allegedly involuntary statement was a lie:

>> Also, defendant admitted that she lied to the officers in order to protect her son by telling them that she personally placed the bomb. That she had the presence of mind to lie weighs strongly in favor of finding that her statements were the product of her own free and unconstrained will, as opposed to having resulted from an impairment of her self-determination.

> Similar circumstances exist in this case. If, in fact, defendant had the presence of mind to make statements to the officers in which he intentionally told several versions of what he now claims was a false statement created in an attempt to protect his brother, that fact severely undercuts his argument that his making of those statements was involuntary. *Id.*

9

> After reviewing the entire record and considering the totality of the circumstances, we find that the trial court did not err in determining that defendant's statements were voluntary.

*People v. Jordan*, No. 210892 (Mich. App. May 19, 1999), slip op. at 2-3.[Footnote omitted.]

### 1. Motion to suppress

Petitioner's counsel did not bring a pre-trial motion to suppress his statements on this ground. Rather, counsel objected at trial to statements made while in police custody, as violating his rights under the Fourth and Fifth Amendments. Trial Trans. II at 269-80, 296-303. Under Michigan law, "[a] motion to suppress evidence must be made prior to trial or, within the trial court's discretion, at trial." *People v. Gentner, Inc.*, 262 Mich. App. 363, 368, 686 N.W.2d 752 (2004); *People v. Ferguson*, 376 Mich. 90, 135 N.W.2d 357 (1965). In the present case, the court exercised its discretion to hear the motion and conduct the *Walker* hearing during the trial, explaining that it was "doing something that is customarily done long before any trial." Trial Trans. II at 303-04.

### 2. *Miranda* claim

The first question before this court is whether the Michigan state courts properly found that petitioner waived his *Miranda* rights. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that the Fifth Amendment's privilege against self-incrimination protects individuals from "informal compulsion exerted by law enforcement officers during in-custody questioning." *Mahacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *quoting Miranda*, 384 U.S. at 461. Thus, law enforcement officials must warn an individual before interrogation begins of his right to remain silent, that any statement may be used against him and that he has the right to counsel. *Miranda*, 384 U.S. at 478-79. A court will exclude statements made by a suspect unless the suspect knowingly, voluntarily and intelligently waived his *Miranda* rights. *Pennsylvania v.*

*Muniz*, 496 U.S. 582, 589 (1990); *Mahacek*, 213 F.3d at 954. The inquiry to determine a valid *Miranda* waiver has two distinct dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1985). "Coercive police activity is a necessary element for finding that a confession was involuntary." *Abela v. Martin*, 380 F.3d 915, 928 (6th Cir. 2004), *citing Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

Petitioner contends that his mandatory disrobement at the police station had a compelling, overbearing and coercive effect on him in violation of his Fifth Amendment rights. Petition at 14. Petitioner contends that he was "clad only in his drawers," without clothes or transportation "in the frigid cold of February" [Emphasis in original.] *Id.* at 13. Petitioner further contends that the police used the illicit tactic of stripping him nude to "break" him. *Id.* at 13. As an initial matter, petitioner presented no evidence to support his bald assertion that he was stripped nude by the authorities. The state courts found that petitioner "allowed officers to take several articles of his clothing for analysis after the officers purportedly observed blood on his coat, shoes, and socks." *Jordan*, slip op. at 1. Petitioner wore long underwear and a tee shirt from the time he gave the police his clothing, and was given a blanket and some socks when he complained about the cold. *Id.*, slip op. at 1, 3.

11

Even though petitioner was partially disrobed, this was only one factor to be considered in evaluating the validity of his *Miranda* waiver. To "determine the totality of the circumstances," the court should consider factors such as: police coercion; the length, location and continuity of the interrogation; the suspect's maturity, education, physical condition and mental health; and whether the suspect was advised of his *Miranda* rights. *See Withrow v. Williams*, 507 U.S. 680, 693-94 (1993); *Abela*, 380 F.3d at 928. In the present case, the Michigan Court of Appeals reviewed all of these factors in determining that petitioner had validly waived his *Miranda* under the totality of the circumstances test. *See People v. Jordan*, No. 210982, slip op. at 2-3. While petitioner's disrobement was one factor to consider, the Michigan Court of Appeals properly considered the totality of the circumstances when it concluded that petitioner's statements were voluntary.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

### B. Sixth Amendment claim

Next, petitioner contends that he is entitled to habeas relief due to the ineffective assistance of his appellate counsel for failing to raise a Fourth Amendment claim. The Fourth Amendment provides that the people are "to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures . . . and no Warrants shall issue but upon probable cause." Claims brought pursuant to the Fourth Amendment regarding the admissibility of evidence are not

subject to federal habeas review. *See Stone v. Powell*, 428 U.S. 465, 494-95 (1976). However, petitioner correctly points out that "a habeas petitioner may assert a Sixth Amendment claim based on his counsel's failure to move for the suppression of evidence that should be excluded under the Fourth Amendment." *Northrop v. Trippett*, 265 F.3d 372, 378 (6th Cir. 2001). Accordingly, petitioner's Sixth Amendment ineffective assistance of appellate counsel claim is properly before the court.

### 1.     Standard of review for ineffective assistance of appellate counsel

In *Strickland v. Washington.* 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-prong test to determine ineffective assistance of counsel: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003), *citing Strickland*. It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745 (1983). On the contrary, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones*, 463 U.S. at 751-52.

It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id.* at 752, *quoting* R. Stern, *Appellate Practice in the United States* 266 (1981). "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention." *Id.* As a general rule, "only when ignored

13

issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986). Appellate counsel cannot be ineffective for failing to raise an issue that lacks merit. *Willis*, 351 F.3d at 745; *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

### 2. Underlying Fourth Amendment claim

The Fourth Amendment prohibits the state from obtaining a confession by exploitation of an illegal arrest. *See Kaupp v. Texas*, 538 U.S. 626, 627, 629-30 (2003); *Brown v. Illinois*, 422 U.S. 590, 602 (1975). At trial, petitioner's counsel contended that petitioner's statements should be excluded because they resulted from an illegal arrest, because the officers lacked probable cause to arrest him. Trial Trans. II at 37. In his habeas petition, petitioner contends that his illegal arrest "occurred the moment the police placed him in their vehicle and transported him to the station without judicial authorization" and that his statements should have been suppressed under the Fourth Amendment as the tainted "fruit of the poisonous tree." Petition at 20-21.

Petitioner's appellate counsel briefly raised this issue on appeal, pointing out the trial court's statements that petitioner was "unlawfully detained" when the police officers took his clothes. Appellant's Brief at 17-18 (docket no. 19). The Michigan Court of Appeals concluded that defendant's reference to the trial court's "unlawful detention" statement was taken out of context:

> [FN1.] Defendant points out that the trial court referred to his circumstances from the time his clothes were taken to the time he was given his *Miranda* warnings as an "unlawful detention." However, it is clear from the context of the court's remarks that it was not ruling that the police did not have probable cause to arrest defendant, nor that he had been unlawfully seized. Rather, the court simply found that at the point that officers took defendant's clothing, he was in custody. To the extent that defendant points to the court's misstatement to advance an alternative theory of exclusion, we deem such argument abandoned as insufficiently briefed. *See People v. Dilling*, 222 Mich.App 44, 51; 564 NW2d 56 (1997).

*Jordan*, No. 210892 (Mich. App. May 19, 1999), slip op. at 4, fn. 1.

The trial court concluded that petitioner was detained when the officer took his clothing. Trial Trans. II at 301-02. The trial court chose the time of petitioner's "disrobement" as

the time when petitioner was detained, because "a reasonable person in those circumstances would believe that he is not free to go." Trial Trans. II at 302. While the trial court used the term "unlawful detention" in ruling from the bench, the court later clarified that it meant that petitioner was "in custody" at the time the officers took his clothing, not that petitioner had been unlawfully detained or illegally arrested. Trial Trans. II at 301-02; *People v. Jordan*, No. 97-401530-FC (Berrien Co. Cir. Ct.) (Opinion and Order denying motion for relief from judgment Aug. 3, 2001) at 3, fn. 2.

### 3. *Walker* hearing

The trial court's opinion regarding petitioner's Sixth Amendment claim is brief and does not address the Fourth Amendment issue in great detail. While the Michigan Court of Appeals issued an extensive opinion to support its rejection of petitioner's Fifth Amendment *Miranda* claim, the appellate court did not provide such an opinion with respect to the Sixth Amendment claim. Accordingly, the court will review the evidence set forth at the *Walker* hearing to determine whether any basis exists for petitioner's claim that his appellate counsel was ineffective for failing to raise the Fourth Amendment claim.

Officer Steve Bobo gave the following testimony at the *Walker* hearing. He received a dispatch at 6:14 a.m. on February 25, 1997 regarding a "man down" at the intersection of Cass and Knowlen Streets in Benton Harbor. Trial Trans. I at 54. When he arrived at the scene, he found a man on the ground, who appeared to be deceased, with gun shot wounds to the head and chest area. *Id.* at 54-55. After Bobo and another officer secured the crime scene with police tape, he observed petitioner coming towards him. *Id.* at 55, 61. Officer Bobo told petitioner to stop, but petitioner came through the taped and said, "Police Officer, I got -- come there. I need to show you something" or "Come here I need to show you something." *Id.* at 55-56, 62.

Officer Bobo followed petitioner to a house at 561 Cass Street, where petitioner showed him a man lying on the floor and identified that man as Santino Poole. *Id.* at 56. This victim also appeared to be deceased with gun shot wounds to the head and chest, with blood around his head. *Id.* Petitioner stood in the living room near the body while officers searched the house. *Id.*

15

at 62-63. During the search, Officer Bobo found a rifle on the floor by the front door. *Id.* at 57-58. After checking the house, Officer Bobo escorted petitioner to a police vehicle, which was some distance (75 to 90 feet) from the location of the first body. *Id.* at 59-60. Petitioner identified the first body as that of Kinley Poole. *Id.* at 60, 66. Petitioner stated that he lived at 561 Cass Street and had arrived there at about 6:30 a.m. that morning. *Id.* Officer Bobo asked petitioner to have a seat in the police vehicle. *Id.* at 63.

Petitioner gave the following testimony. He lived at 561 Cass Street, approached Officer Bobo, he went through the yellow tape at the crime scene and told the officer that he wanted to show the officer something. Trial Trans. II at 229-30, 252. Petitioner admitted that he took the officer into the house and showed him Santino's body. *Id.* at 231. While petitioner intended to tell the police what had occurred at the house, he stated that he did not consider himself a witness. *Id.* at 253-54. Petitioner was not questioned at the crime scene but agreed to go to the police station for questioning. *Id.* at 262.

Petitioner sat down in the police car after Officer Bobo said, "Do you want to get in the patrol car in order to keep warm?" *Id.* at 256. Petitioner asked to get out of the car to go to a restroom but was told "no." *Id.* at 231. Petitioner later clarified that while he wanted to use the bathroom at 561 Cass Street, the officers would not let him go into the house, and that he was able to use a restroom at the police station. *Id.* at 261-62. Otherwise, petitioner did not ask to leave the car or tell the officer that he wanted to leave. *Id.* at 257.

Petitioner also testified that Detective O'Brien told him that he was going to the police station for a couple of questions and then took him to the Benton Harbor Police Department. *Id.* at 232-33, 259. Petitioner agreed to go to the police station to answer questions. *Id.* at 254, 259-60. Petitioner's father was present at the scene, but he did not ask to talk to his father. *Id.* at 254, 259-60.

Detective O'Brien testified as follows. He first saw petitioner at about 6:45 a.m. and observed petitioner in the back seat of the police cruiser. *Id.* at 207. He was unaware that petitioner

was denied permission to leave the vehicle to go to the restroom, and stated petitioner would not have been allowed to go the house to use the bathroom because it was a crime scene. *Id.* at 208, 224-25. O'Brien told petitioner that the officers "wanted to interview him about what he had found." *Id.* at 213. O'Brien did not order petitioner, but asked him to get in the van. *Id.* at 224. Unlike the police cruiser, the van did not have protection for the officers (mesh or plastic separating the front and back seat, rear doors that cannot be unlocked from the inside) and was not used to transport prisoners. *Id.* at 213-14. If petitioner would have refused the request to get in the van, then O'Brien "probably would have taken his statement right then and there from him." *Id.* at 224.

Officer Labaumbard testified that he interviewed petitioner at the Benton Harbor police station at about 9:00 a.m. Trial Trans. I at 93. At that time, Labaumbard explained to petitioner that he was a witness and that the police were attempting to obtain information from the residents at 561 Cass Street. *Id.* at 93-94.

### 4. Ineffective assistance of appellate counsel

The trial court denied petitioner's motion to exclude his subsequent statements on the ground that the statements were the result of an illegal arrest. Trial Tran. II at 300. In reaching this decision, the court concluded that petitioner was not arrested as a suspect but was a witness that voluntarily offered information to the police officers. *Id.* The court found that petitioner voluntarily submitted himself to the police and offered them information about the homicides. Trial Trans. II at 298, 300. The court ruled that at the time petitioner agreed to go with the police, "he was always free to go," he had several opportunities to go, "he never requested to do anything other than go with the police to the police station," and "he knew he had information that the police wanted to talk to him about --- as a witness." Trial Trans. II at 300. The court further observed that "[a]lthough . . . [petitioner] denies knowing what a witness is, he knows what the definition is. And to that extent, he -- that is why he was taken to the police station." *Id.* In reaching this determination, the court was mindful that, at some point during the day, the police viewed petitioner as a suspect rather than merely a witness. Both the trial court and the Michigan Court of Appeals found that petitioner was

17

a suspect in custody when he turned his clothing over to the police. *People v. Jordan*, No. 210892 (Mich. App. May 19, 1999), slip op. at 2-3. Up until that time, petitioner was not in custody. *Id.*

"The Fourth Amendment does not proscribe all contact between the police and citizens, but is designed 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *INS v. Delgaldo*, 466 U.S. 210, 215 (1984). A seizure does not occur when a police officer approaches an individual and asks that individual questions. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). An encounter is consensual "[s]o long as a reasonable person would feel free to disregard the police and go about his business." *Id*. "Whether an encounter with the police is consensual is a factual question dependent on all the circumstances surrounding the encounter." *United States v. Pedroza*, 269 F.3d 821, 826 (7th Cir. 2001), *citing Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). Examples of circumstances that might indicate a seizure include the threatening presence of several police officers, the display of a weapon by an officer, physical touching by an officer or the use of language or tone of voice that compliance with the officer's request might be compelled. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (Opinion of Stewart, J.).

Based on the facts presented at the *Walker* hearing, the trial court properly concluded that petitioner was not arrested or unlawfully detained. The police officers did not seek out petitioner. On the contrary, petitioner sought out the police because he wanted to show them Santini Poole's body and share information with them: he crossed to police tape to speak with Officer Bobo; identified both victims; directed the police to the body of one of the victims; resided in the same house as the victims; agreed to answer questions by the police at the police station; and voluntarily sat in the police vehicle with his father nearby. The police did not use force, weapons, physical contact, or threatening language to stop petitioner, question petitioner or make him go to the police station. The encounter between petitioner and the police was not the type of "arbitrary and oppressive interference" by law enforcement officials that the Fourth Amendment is intended to prohibit. *Delgaldo*, 466 U.S. at 215. The fact that petitioner was not allowed to visit the bathroom at the

house at 561 Cass Street, which was being investigated as a crime scene at the time, does not demonstrate that he was not free to leave the car. Petitioner did not ask to leave the car for any other reason. After considering the circumstances of the encounter between petitioner and the police, the trial court properly concluded that petitioner was not subject to an illegal arrest before he was transported to the police station. *See Bostick*, 501 U.S. at 434; *Delgaldo*, 466 U.S. at 215; *Mendenhall*, 446 U.S. at 554; *Bustamonte*, 412 U.S. at 227. Accordingly, petitioner's statements made at the police station did not arise from the "exploitation of an illegal arrest" in violation of the Fourth Amendment. *See Brown*, 422 U.S. at 603.

Petitioner's appellate counsel was not ineffective for failing to raise this meritless Fourth Amendment issue. *See Greenup v. United States*, -- F.3d -- (6th Cir. March 29, 2005), slip op. at 9; *Willis*, 351 F.3d at 745. Accordingly, petitioner's claim that he received the ineffective assistance of appellate counsel in violation of the Sixth Amendment fails.

## **Recommendation**

I respectfully recommend that petitioner's habeas petition be dismissed. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated: May 9, 2005         /s/ Hugh W. Brenneman, Jr.
                           Hugh W. Brenneman, Jr.
                           United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).